**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**WILLIE PATTON**                                                              **PLAINTIFF**

**V.**                                           **CAUSE NO. 3:10-CV-00138-CWR-LRA**

**HINDS COUNTY JUVENILE DETENTION
CENTER (HENLEY-YOUNG); WILLIAM
SKINNER, INDIVIDUALLY AND IN HIS
CAPACITY AS OPERATOR/DIRECTOR OF
HINDS COUNTY JUVENILE DETENTION
CENTER (HENLEY-YOUNG); HINDS
COUNTY BOARD OF SUPERVISORS; ROBERT
GRAHAM, INDIVIDUALLY AND IN HIS
CAPACITY AS BOARD OF SUPERVISORS;
DOUGLAS ANDERSON, INDIVIDUALLY AND
IN HIS CAPACITY AS BOARD OF                                  **DEFENDANTS**
SUPERVISORS; PEGGY HOBSON CALHOUN,
INDIVIDUALLY AND IN HER CAPACITY AS
BOARD OF SUPERVISORS; PHILIP FISHER,
INDIVIDUALLY AND IN HIS CAPACITY AS
BOARD OF SUPERVISORS; GEORGE S. SMITH,
INDIVIDUALLY AND IN HIS CAPACITY AS
BOARD OF SUPERVISORS; AND VERN GAVIN,
INDIVIDUALLY AND IN HIS CAPACITY AS
COUNTY ADMINISTRATOR**

## <u>ORDER GRANTING SUMMARY JUDGMENT</u>

The above-styled matter is before the Court on the Motion for Summary Judgment

[Docket No. 22] of Judge William Skinner in his individual capacity. The Court has considered

the parties' briefs and the arguments offered at the hearing held on this matter on April 25, 2011,

and has concluded that the motion must be granted.

## **FACTUAL BACKGROUND**

Willie Patton is an African American and a former employee of the Henley-Young

Juvenile Detention Center in Hinds County, Mississippi. He worked as a shift supervisor at the facility from January 2000 to August 13, 2008.

According to Patton, in November 2007 he was among several employees on whose paychecks a white payroll clerk made errors. After testifying against the clerk in a disciplinary hearing, Patton claims that "he began to be harassed, threatened, and subsequently demoted." Complaint [Docket No. 1] at 3-4. Thereafter, while on duty on May 6, 2008, he was escorted from the facility by police, and his keys were confiscated. After a hearing – at which Patton avers "the hearing officer stated he did not want to hear any further evidence" just "shortly after the proceeding began," Complaint at 4 – Patton received an Order of Reprimand on May 19, 2008, and he was demoted from supervisor to senior officer. Patton's troubles did not end then, though, and he claims that his "employment became very stressful and difficult" because "the defendants continued to harass and humiliate him." Complaint at 4.

Patton says that, eventually, a recommendation to terminate his employment was submitted to Judge William Skinner, who served as the detention center's director. Complaint at 2, 4. According to Patton, his employers told him that he "was terminated for insubordination, leaving his post while on duty, tardiness, and for failing to complete cell checks" but that he "was never counseled by the supervisors, director or the judge in charge of the facility regarding the above allegations." Complaint at 4. "The defendants did not allow Willie Patton the benefit of due process of the law," Patton claims, "nor did the defendants follow the Hinds County disciplinary policies in his termination." Complaint at 5. Patton later argued that he "was terminated from his position . . . without the benefit of the protections and safeguards provided to him by the Hinds County Personnel Handbook . . . ." Patton's Memorandum in Opposition

[Docket No. 30] at 2. Patton does not explain which particular disciplinary policies and due processes the defendants denied him.

Patton claims that he pursued a grievance with the Board of Supervisors and filed charges of race discrimination three times with the Equal Opportunity Employment Commission. Aside from explaining that the pursuits were fruitless, Patton has not submitted a copy of the Board's decision and does not recount the basis for its decision. Likewise, Patton does not elaborate on the outcome of his efforts with the EEOC, aside from claiming that "[e]ach time the agency declined to accept the charge of discrimination." Complaint at 5.

### THE PATCHWORK OF CLAIMS

Patton filed suit in district court on March 3, 2010, and brought against the defendants a total of 21 claims:

- (1.) Breach of contract[1]
- (2.) Breach of fiduciary duty
- (3.) Negligent omission
- (4.) Breach of implied covenant of good faith and fair dealing
- (5.) Fraudulent omission
- (6.) Negligent omission[2]

---

[1] There is no dispute that Patton satisfied the necessary prerequisites before pursuing claims based on torts allegedly committed. *Suddith v. Univ. of Southern Mississippi*, 977 So. 2d 1158, 1177 (Miss. Ct. App. 2007). He, however, did not have to exhaust any administrative remedies before pursuing his breach of contract claim. *Whiting v. Univ. of Southern Mississippi*, ___ So.3d ___, 2011 WL 1168147, *5 (Miss. 2011). But his breach of contract claim against Skinner ultimately fails because there is no allegation that he had a contract *with* Skinner. At best, his "contract" was with Hinds County as he looked to the "protections and safeguards provided to him by the Hinds County Personnel Handbook which the county had duly adopted and implemented as dictated by state law." Memorandum in Opposition to Judge William Skinner's Immunity Based Motion for Summary Judgment [Docket No. 30] at 2.

[2] Patton avers at Claim No. 3 that the defendants committed the tort of negligent omission when they "omitted the proper procedures as it relates to the plaintiff's termination." Complaint [Docket No. 1] at 7. Similarly, at Claim No. 6, Patton alleges that "[t]he defendants omitted to

- • (7.) Discrimination
- • (8.) Negligent termination[3]
- • (9.) Wrongful termination[4]
- • (10.) "[A] violation of his due process rights . . . [as] outlined in the 14th, 4th, and 6th Amendments to the United States Constitution."[5]
- • (11.) Harassment
- • (12.) Conspiracy
- • (13.) Failure to train
- • (14.) Failure to supervise
- • (15.) Deliberate indifference "under the Fourteenth Amendment"[6]
- • (16.) Negligence
- • (17.) First Amendment

_____

follow termination procedures." These claims are substantively identical and are treated herein as one and the same.

[3] The heading above Claim No. 8 reads "Wrongful Termination." However, the claim itself makes no such aversion and, instead, reads: "The plaintiff performed his services promptly and professionally. The defendants did not complain of the services provided by the plaintiff until he testified against a white female employee. The termination/removal of the Plaintiff constitutes negligent termination of said plaintiff." The claim then goes on to request punitive damages. Complaint at 8-9. However, Mississippi law recognizes no such tort as "negligent termination." To the extent that the statement constitutes a claim for negligence inherent to Patton's termination, it is redundant to Claim No. 16. Under either theory, it must be dismissed as a matter of law.

[4] Presumably, this is a claim for the tort of retaliatory discharge, which Mississippi law recognizes. *See DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 358 (Miss. 2008).

[5] At the hearing held on this matter on April 25, 2011, Patton's attorney explicitly abandoned this claim.

[6] "Deliberate indifference" amounts to a violation of the Constitution when it rises to such a level as to implicate the guarantee of due process. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Specifically, such an offense implicates the substantive (as opposed to the procedural) aspect of the Fourteenth Amendment's Due Process Clause. *McClendon v. City of Columbia*, 305 F.3d 314, 330 (5th Cir. 2002). Therefore, to the extent that Claim No. 15 seeks relief for a violation of the Due Process Clause's substantive aspect, such a claim may be brought. But merely denominating a claim is simply not enough. As is discussed more fully below, Patton cannot prevail on that claim. More specifically, in order to prevail on such a claim, he must show not only that he had a property interest in his position but also that the termination of that interest was arbitrary and capricious. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

- • (18.) Bad faith
- • (19.) Hostile environment
- • (20.) Separation of powers
- • (21.) Slander, libel and defamation

Complaint at 6-11.[7]

Although Patton's Complaint never refers specifically to Title 42, Section 1983 of the United States Code, presumably his claims related to constitutional violations rest on that commonly invoked statute. *See Bolen v. Dengel*, 340 F.3d 300, 312 (5th Cir. 2003) ("The complaint must be liberally construed in favor of the plaintiff, and all the facts pleaded in the complaint must be taken as true to determine whether the plaintiff has any valid claim for relief.") (quoting *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999)).[8]

Skinner answered on April 27, 2010, and with his third defense, he specifically pled "absolute, judicial, and/or quasi-judicial and/or qualified immunity and immunity from suit and/or liability herein." Answer and Affirmative Defenses [Docket No. 9] at 2. He likewise pled the affirmative defense of "sovereign immunity pursuant to and as set forth in Miss. Code Ann. § 11-46-1 *et seq.*" Answer at 11.

---

[7] Counsel for Patton filed a similar lawsuit on behalf of another of Patton's co-workers. *See Lakesha Bell-Wilson v. Judge William Skinner, et al.*, Civil Action No. 3:09-CV-00147-CWR-FKB (S.D. Miss. March 4, 2011). Like the instant case, there the Plaintiff filed a hodge-podge of allegations, all of which lacked merit. During the oral argument on the motion for summary judgment, counsel for the Plaintiff conceded many of the claims as they had no basis in fact or in law. However, during oral argument on the motion at hand, counsel only conceded one issue, *see* n.5, *supra*, even though many of the other claims asserted here do not withstand minimal scrutiny.

[8] The Court, however, notes that in his Memorandum in Opposition to Judge William Skinner's Immunity Based Motion for Summary Judgment, Patton refers to 42 U.S.C. § 1983 in support of his alleged race discrimination, hostile work environment and conspiracy claims. *See* Pl. Memo [Docket No. 30] at 9-10. But as is explained *infra*, those claims must be dismissed.

5

On January 11, 2011, Skinner, proceeding in his individual capacity only, moved the Court for summary judgment largely on the basis of absolute, qualified, and sovereign immunity [Docket No. 22]. That same day, Skinner moved the Court to stay the case [Docket No. 24] pending the adjudication of the immunity question, and Magistrate Judge Anderson granted that request [Docket No. 28] on January 12, 2011. Therefore, the parties did not complete discovery.[9]

On February 2, 2011, counsel for Patton responded in opposition to Skinner's motion with a peculiar memorandum comprised of what appears to be a patchwork of cut-and-pasted paragraphs from, at times, a seemingly random assortment of authorities. For example, under the heading of "Separation of Powers," counsel for Patton recites a paragraph addressing the doctrine of supplemental jurisdiction from *Board of Regents of University of Texas System v. Nippon Telephone & Telegraph Corporation*, 478 F.3d 274, 277 (5th Cir. 2007). Under a "Breach of Contract" heading, the memorandum quotes a Mississippi Court of Appeals decision that recites the elements for a breach-of-contract claim but makes no effort to tie the authority to the facts at hand. And under the headings of "Race Discrimination and Hostile Environment" and "Wrongful Termination," the memorandum presents no text at all. Pl. Memo at 9-11.

## SUMMARY JUDGMENT STANDARD

Although motions for summary judgment are filed frequently, not every case is suitable for that disposition. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant shows the court that it is entitled to judgment as a matter

---

[9] *See Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996) ("Some discovery was permitted. If the plaintiff needed more discovery in order to defeat summary judgment, it was up to her to move for a continuance pursuant to [R]ule 56(f).").

of law, the burden shifts to the resisting party to show why summary judgment is not proper. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must point to and set forth specific facts as to the existence of a genuine issue of material fact requiring a trial. *Walker v. J.E. Merit Constructors, Inc.*, 707 F. Supp. 254, 257 (S.D. Miss. 1988). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Davis v. Louisville Mun. Sch. Dist.*, 2010 WL 290956, *2 (N.D. Miss. 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one which might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id*.

The court has no duty whatsoever to sift through the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006). *See also Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (not only must the non-movant point to specific facts, she must articulate the precise manner in which that evidence support her claim). Additionally, "[t]he court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory

7

facts." *Zisman,* 2008 WL 879726 at \*3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Where there is no proof of contradictory facts, the court will not assume that the nonmoving party could or would prove the necessary facts. *Id.* (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996).

The responsibility to assess the probative value of the evidence rests ultimately with the jury. As a consequence, a court must step back and refrain from making credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005). This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989). But where the relevant facts are not in dispute, and the disagreement at hand regards only questions of law, summary disposition is appropriate. *See, e.g., Smith v. Brookhaven Sch. Dist.*, 2011 WL 2436146, \*2 (S.D. Miss. June 14, 2011).

## ANALYSIS

Of the three forms of immunity on which Skinner relies, absolute judicial immunity is clearly of no use to his defense.

Generally speaking, judges long have been absolutely immune from civil liability. *Bradley v. Fisher*, 80 U.S. 335, 347 (1872). *See Boston v. Lafayette Cnty., Mississippi*, 744 F. Supp. 746, 750 (N.D. Miss. 1990) ("Judges are entitled to absolute immunity in the exercise of their judicial function unless they act in the clear absence of jurisdiction."). However, because "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches," *Forrester v. White*, 484 U.S. 219, 227 (1988), the doctrine of judicial

immunity only protects against litigation seeking damages inflicted through "judicial acts." *Id.* *See also Bradley*, 80 U.S. at 347 (absolute judicial immunity "exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions . . ."). Absolute judicial immunity does not forbid suit for civil liabilities incurred within "the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester*, 484 U.S. at 227.

Taken in the light most favorable to Patton, the evidence existing before the Court does not support the application of absolute judicial immunity to Skinner's acts. A letter sent on January 28, 2009, to Patton by Bridget Smith (then the interim personnel director for the Board of Supervisors), indicates that a "recommendation" was made to Skinner "concerning termination of employment." Exhibit 2 to Response in Opposition to Motion for Summary Judgment [Docket No. 29-2] at 3. This evidence supports Patton's contention that Skinner acted within his capacity as an administrator and not through the "judicial function." *Bradley*, 80 U.S. at 347. Therefore, absolute judicial immunity does not avail Skinner in the case at bar.

However, the doctrine of qualified immunity does offer Skinner protection. In the realm of litigation under Section 1983, "[q]ualified immunity shields state officials from liability unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Fifth Circuit applies a burden-shifting analysis to invocations of qualified immunity against Section 1983 claims. "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of

9

discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). *See also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Therefore, a full evaluation of any assertion of qualified immunity against a Section 1983 claim requires two inquiries: first, whether the plaintiff has "alleged the violation of a clearly established right," and second, whether the defendant's "actions [were] objectively reasonable in light of clearly established law at the time of the conduct in question." *Gros v. City Grand Prairie, Tex.*, 34 Fed. Appx. 150, *9 (5th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). *See also Pradhan v. Texas A&M Univ. Sys.*, 2001 WL 872742, *1 (5th Cir. 2001) ("A state official exercising discretionary authority is shielded from personal liability by qualified immunity, unless at the time and under the circumstances all reasonable officials would have realized that their conduct was proscribed by the federal law upon which the suit is founded.").

Similarly, under Mississippi law, "governmental . . . employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the . . . employee . . . , whether or not the discretion be abused . . . ." *Dancy v. East Mississippi State Hosp.*, 944 So. 2d 10, 15-16 (Miss. 2006) (quoting Miss. Code Ann. § 11-46-9(1)(d)). *See also Fairley v. George Cnty.*, 871 So. 2d 713, 726 (Miss. 2004) ("Governmental employees are entitled to qualified immunity for discretionary acts."). Of equal, if not greater, significance for Skinner is the fact that Section 11-46-7(2) of the Mississippi Code provides that

no employee shall be held personally liable for acts or omissions occurring within the course of employment. There is a rebuttable presumption that any act or omission within the time and in the place of employment is considered to be within the course and scope of such employment. *Stingley v. Smith*, 844 So. 2d 448, 452 (Miss. 2003); *Fisher v. Talton*, 2007 WL 853441, *3 (S.D. Miss. 2007). Nowhere in Patton's Complaint or other pleadings does he explicitly suggest that Skinner was acting outside the course and scope of his employment, and only one of his state-law claims – defamation – could possibly have been committed outside the course and scope of his employment.

**State Law Claims.** All of Patton's state law claims against Skinner stem from the latter's termination of the former's employment. But the record's evidence supports no other conclusion than that Patton was an at-will employee. In a memorandum from Skinner to Patton and dated June 12, 2008, Skinner advises Patton that Patton "work[s] at the will and pleasure of the Youth Court Judge . . . ." Exhibit F to Motion for Summary Judgment [Docket No. 22-6]. Patton offers no evidence to the contrary.

Only under the narrowest of circumstances does Mississippi law recognize the termination of an at-will employment as anything but a matter of discretion. *See Davis v. Biloxi Pub. Sch. Dist.*, 937 So. 2d 459, 462 (Miss. Ct. App. 2005) ("Davis was an at-will employee, and the Biloxi Public School District had the discretion to terminate him for any reason."), *cert. denied*, 937 So. 2d 450 (Miss. 2006); *Hust v. Forrest Gen. Hosp.*, 762 So. 2d 298, 301 (Miss. 2000) (recounting exceptions to the employee-at-will doctrine for terminations due to refusal to participate in illegal activity or reporting such activity); *Rosen v. Gulf Shores, Inc.*, 610 So. 2d 366, 368 (Miss. 1992) ("Mississippi follows the common law rule that a contract of employment

11

for an indefinite amount of time may be terminated at the will of either contracting party."); *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1089 (Miss. 1987) ("It is well known that in 1981 this Court was asked to carve out a public policy exception to the common law rule and flatly refused to do so.").

Moreover, even if Skinner had abused the broad discretion vested in him to act on personnel recommendations, state law still would afford immunity to him. Miss. Code Ann. § 11-46-9(1)(d). Only if the evidence, viewed in the light most favorable to Patton, demonstrated that Skinner had acted outside the course and scope of his employment could the Court entertain suit against Skinner free of the protections of immunity, but such a showing would require proof of "fraud, malice, libel, slander, defamation or any other criminal offense." Miss. Code Ann. § 11-46-7(2).

Therefore, as a matter of law, Skinner is entitled to summary judgment on most of the state-law claims stemming from the discretionary decision to terminate Patton's employment. Specifically, immunity requires summary judgment on Patton's claims of breach of fiduciary duty (Claim No. 2), negligent omission (Claim Nos. 3 and 6), breach of the implied covenant of good faith and fair dealing (Claim No. 4), fraudulent omission (Claim No. 5), wrongful termination[10] (Claim No. 9), failure to train (Claim No. 13), failure to supervise (Claim No. 14), negligence (Claim No. 16), and bad faith (Claim No. 18). Employment decisions, like that about which Patton complains, are classic discretionary functions, *see DePree*, 2008 WL 4457796 at *9, since they require "personal deliberation, decision and judgment." *Davis v. Little*, 362 So. 2d

---

[10] *See also DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 358-59 (Miss. 2008) (holding that Mississippi law does not permit individual liability against a superior co-employee for retaliatory discharge, although liability may affix to the employer).

642, 643 (Miss. 1978).

Superficially, the other claim taking root in state law – "slander, libel, and defamation" (Claim No. 21) – passes beyond the scope of behavior identified by state law as that occurring within the course and scope of employment and, therefore, fall beyond the bounds of immunity. Miss. Code Ann. § 11-46-7(2) ("an employee shall not be considered as acting within the course and scope of his employment . . . if the employee's conduct constituted fraud . . . libel, slander, [or] defamation . . . ."). But even on this claim Skinner is entitled to summary judgment.

Skinner correctly recounts the statute of limitations for "all actions for slanderous words concerning the person or title, . . . and for libels," which, under Section 15-1-35 of the Mississippi Code, "shall be commenced within one (1) year next after the cause of such action accrued, and not after." Defendant's Memorandum [Docket No. 23] at 16-17. Patton has not identified any specific statement that, in his view, constitutes defamation, much less one uttered no more than one year before he commenced this lawsuit on March 3, 2010. *See Simmons Law Group, P.A. v. Corporate Mgmt., Inc.*, 42 So. 3d 511, 517 (Miss. 2010) ("To establish a defamation claim, an ordinary plaintiff must show . . . a false and defamatory statement concerning the plaintiff[.]"). Therefore, he has not stated a cause of action that satisfies the statute of limitations, and Claim No. 21 must be dismissed with prejudice.

Likewise, to the extent that Patton believes his claim for fraudulent omission is one that should be analyzed outside of the Mississippi Tort Claims Act, summary judgment is appropriate on that claim as well. Patton contends that Skinner committed **fraud** by omission by "fail[ing] to advise Mr. Patton of the problems associated or connected with his employment," by "le[ading] Mr. Patton to believe that there were no problems with his work," and by "conceal[ing] that

13

Judge Skinner was wrongfully employed as judge and administrator." Complaint at 8. Skinner responds by arguing that Patton "has had a long history of employment problems" and that the allegation is otherwise "patently frivolous." Def. Memo at 18. Neither of these arguments presents a basis for ruling, as a matter of law, that Patton cannot proceed on the claim.

However, it does not escape the Court that "a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted." *Taylor v. Southern Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1048 (Miss. Ct. App. 2007). *See also Strong v. First Family Fin. Serv., Inc.*, 202 F. Supp. 2d 536, 540 (S.D. Miss. 2002) ("[S]ilence, in the absence of a duty to speak, is not actionable."). Patton contends that Skinner committed fraud by omission by "fail[ing] to advise Mr. Patton of the problems associated or connected with his employment," by "le[ading] Mr. Patton to believe that there were no problems with his work," and by "conceal[ing] that Judge Skinner was wrongfully employed as judge and administrator." Complaint at 8. But even if these allegations are true, Patton has pointed to no authority suggesting that Skinner operated under a duty so to inform Patton, nor has Patton offered any evidence establishing that Skinner's failure to inform transported Skinner outside the scope and course of his employment. Indeed, Patton's response to Skinner's motion for summary judgment makes no mention of this claim and, presumably, concedes the point.

**Federal Law Claims.** As with the claims raised under state law, most of Patton's claims brought pursuant to Section 1983 fall to the doctrine of qualified immunity.

The Fifth Circuit applies a burden-shifting analysis to invocations of qualified immunity against Section 1983 claims. "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of

14

discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). *See also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Therefore, a full evaluation of any assertion of qualified immunity against a Section 1983 claim requires two inquiries: first, whether the plaintiff has "alleged the violation of a clearly established right," and second, whether the defendant's "actions [were] objectively reasonable in light of clearly established law at the time of the conduct in question." *Gros v. City Grand Prairie, Tex.*, 34 Fed. Appx. 150, *9 (5th Cir. 2002) (*citing Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Patton claims violations of several provisions[11] of the United States Constitution – specifically, the Equal Protection Clause (Claim No. 7), the substantive aspect of the Due Process Clause (Claim No. 15), the First Amendment (Claim No. 17), and the separation-of-powers doctrine (Claim No. 20). It goes without saying that each of these provisions represents a clearly established constitutional right. But Patton cannot pass through the first leg of the qualified-

---

[11] Claim No. 11 begins with a heading styled "Harassment" and reads, in full, "The above named defendants harassed the plaintiff thereby violating his constitutional rights." Complaint at 9. The United States Constitution does not preclude harassment. Lacking a more particular explanation, this averment fails to state a claim on which relief can be granted. Likewise, Claim No. 19 presents a heading of "Hostile Environment" and avers simply, "The actions of the defendants created a hostile work environment." Complaint at 11. The Constitution contains no provision guaranteeing a right to a peaceful work environment. To the extent that counsel for Patton has attempted to enunciate a claim for relief pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, under which hostile work environments frequently give rise to allegations of constructive discharges, the claim must fail because the record lacks any right-to-sue letter from the Equal Employment Opportunity Commission. *See Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1215-16 (5th Cir. 1982).

immunity gauntlet simply by reeling off a series of constitutional rights; rather, he must demonstrate that the provisions allegedly violated by a defendant enumerated specific, clearly established rights with which particular actions created disharmony. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."); *Brown v. Miller*, 519 F.3d 231, 237-38 (5th Cir. 2008) ("[T]he law was sufficiently clear in 1984 that a state crime lab technician would have known that suppression of exculpatory blood test results would violate a defendant's rights.").

This obligation overcomes all but two of Patton's 1983 claims.

Patton's claim of a procedural violation under the Fourteenth Amendment fails because an at-will employee has no property interest in his employment.

> To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest. To enjoy a property interest in employment, an employee must have a legitimate claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law.

*Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quotations and citations omitted).

In Mississippi, an at-will employee's employer "ha[s] the discretion to terminate [the employee] for any reason." *Davis v. Biloxi Pub. Sch. Dist.*, 937 So. 2d 459, 462 (Miss. Ct. App. 2005) (Chandler, J.). But according to Patton, the Fifth Circuit held in *Muncy v. City of Dallas, Tex.*, 335 F.3d 394 (5th Cir. 2003), that "a property interest may arise from a contract implied from policies and practices of a particular institution." Pl. Memo in Opp. at 7. While that is true,

the *Muncy* Court also observed that "a property interest is not incidental to public employment" and that such an interest exists only to the extent that the state abrogates its right to terminate an at-will employee at any time. *Muncy*, 335 F.3d at 398.

Patton does not enunciate any policy, whether explicit or implicit, delineating a procedure in which he enjoyed a property interest denied by Skinner. His memorandum in opposition to Skinner's motion does not indicate how the *Muncy* decision supports his claim, and his Complaint avers only that "[t]he defendants did not allow [him] the benefit of due process of the law, nor did the defendants follow the Hinds County disciplinary policies in his termination." Complaint at 5. Patton does submit two pages from the Hinds County Board of Supervisors Employee Handbook that describe employee discipline and appeals from related decisions, but Patton does not explain which provision, in his view, has been violated. *See* Exhibit A to Plaintiff's Response in Opposition [Docket No. 29-1].

Accordingly, Patton has not demonstrated under Claim No. 10 that Skinner violated a clearly established guarantee of the Due Process Clause's procedural aspect.

Likewise, Patton has not shown a violation of a right clearly established by the Due Process Clause's protection against deliberate indifference. "To demonstrate a viable substantive due process claim, in cases involving government action, the plaintiff must show that the state acted in a manner that shocks the conscience. . . . To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez ex rel. Hernandez v. Texas Dept. of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (quotations omitted).

Counsel for Patton does not explain in his memorandum how the evidence in the case at

17

bar supports such a claim. Indeed, even viewed in the light most favorable to Patton, it does not

do so. Therefore, Patton has not shown a violation of a clearly established guarantee of the Due

Process Clause's substantive aspect, to wit, its protection against deliberate indifference.

Patton's claim for a violation of the doctrine of separation of powers fails for an even

more fundamental reason: the Constitution does not guarantee a right to judges divested of all

administrative authority. The Supreme Court's decisions regarding judicial immunity have

referred routinely to the fact that judges frequently balance distinct duties regarding purely

"judicial acts" and "the administrative, legislative, or executive functions that judges may on

occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 227 (1988) (holding

that absolute judicial immunity protects against civil liability only for "judicial acts"). The

Supreme Court has never insinuated that such dual responsibilities violate the Constitution.

Therefore, Patton also has not shown the existence to a clearly established right under the United

States Constitution to judges free of administrative authority.

To the extent that Patton suggests his separation of powers is premised on state law only,

he can find no refuge there. Mississippi law vests youth court judges, of which Skinner is one,

with the power to perform certain acts which are associated with their judicial functions but are

indeed administrative or executive in nature. *See, e.g.*, Miss. Atty Gen. Op. 2000-0640 (Nov. 17,

2000) ("judges are entitled by virtue of § 43-21-119 to appoint such personnel as is necessary to

carry out the duties of youth court."). Indeed, the Attorney General has issued an opinion

specifically dealing with Skinner's role and authority to designate youth detention center

administration, *see* Op. Att'y Gen. 2007-332, 2007 WL 2688620 (Miss. A.G. July 20, 2007),

determining that he generally oversees the administration and "daily operations" of the court.

18

Patton's claim under the First Amendment also fails. In his memorandum opposing Skinner's motion for summary judgment, Patton spends the bulk of his argument on this claim directly quoting a passage from the Fifth Circuit's decision in *Hampton Company National Surety, LLC v. Tunica County, Mississippi*, 543 F.3d 221 (5th Cir. 2008), which enjoys some relevance to the case at bar.

In *Hampton*, a surety company and its white agents sued an African-American sheriff, who removed the company from the county's list of approved bail bond agents after the company participated in an extortion investigation of the defendant sheriff's predecessor and criticized the defendant sheriff's handling of bail bondsmen in a local newspaper. *Id.* at 229. The Fifth Circuit recounted that the four necessary elements of a First Amendment claim under Section 1983 are "(1) an adverse decision; (2) speech that involves a matter of public concern; (3) a plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the speech must have motivated the defendant's action." *Id.* In particular, the Fifth Circuit held that "[t]here was a genuine issue of material fact on the question of [the defendant's] justification for not reinstating the Plaintiffs . . . ." *Id.* at 230.

In the case at bar, Patton alleges that Skinner violated the First Amendment by retaliating for statements regarding another employee's accounting blunders. This subject was not, as courts have expounded on the term, a matter of public concern.

Public employees do not enjoy an unfettered freedom of speech. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). Still, public employees do not shed altogether their First Amendment protections when they enter the workplace, and the Constitution condemns a public employer that requires its employees "to relinquish the First Amendment rights they would otherwise enjoy as

19

citizens to comment on matters of public interest in connection with the operation of the [settings] in which they work . . . ." *Pickering v. Bd. of Educ. of Township High Sch. Dist.*, 391 U.S. 563, 568 (1968).

The key distinction between the speech at issue in *Pickering*, which the First Amendment protected, and the statements at issue in the case at bar is that Patton's speech did not regard a matter of public concern. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which the review the wisdom of a personnel decision . . . ." *Connick v. Myers*, 461 U.S. 138, 147 (1983). "The greater the potential social, as distinct from purely private, significance of the employee's speech, the less likely is the employer to be justified in seeking to punish or suppress it." *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994).

In the case at bar, Patton contends that Skinner retaliated against him for speaking out against a payroll clerk who "made an error in [Patton's] pay." Complaint at 3. Even viewed in the light most favorable to Patton, this was a matter of purely private interest; nothing in the evidence suggests that Patton spoke up out of concern for the county's finances. Patton never argues in his Complaint or his response to Skinner's motion that the statement concerned a matter of public interest.

In fact, Patton's Complaint brings his case squarely under the coverage of *Garcetti*, in which the Supreme Court held that the First Amendment did not protect the speech of a government employee who "did not act as a citizen when he went about conducting his daily professional activities" but rather "performed the tasks he was paid to perform . . . ." *Garcetti*,

547 U.S. at 422. Similarly, Patton's claim rests on the allegation that the "[d]efendants violated [his] rights to free speech . . . *for carrying out the duties required by his position*." Complaint at 11 (emphasis added). Patton essentially concedes that he spoke out not as a citizen but as an employee, protection for which *Garcetti* does not afford.

But qualified immunity does not swallow up the whole lot of Patton's claims. Patton's first apparent allegation of a constitutional violation, enunciated at Claim No. 7 under the heading "Discrimination," avers that Skinner "terminated [Patton] on the basis of race" and that Patton "was harassed and terminated because he gave evidence against a white female employee." Complaint at 8. Presumably, this claim takes root in the Equal Protection Clause of the Fourteenth Amendment.[12]

The two-part inquiry that governs the applicability *vel non* of qualified immunity does not bar this claim. The Complaint alleges that Skinner terminated Patton's employment because he was an African American and because he spoke out against the missteps of a white employee. Patton has "a clearly established right to be free from racial discrimination in employment," *Jackson v. Houston Independent School District*, 189 F.3d 467, *7 (5th Cir. 1999), and therefore, the first prong of the test presents no hurdle. Likewise, workplace discrimination on the basis of race, as alleged by Patton, is a course of conduct that is not "objectively reasonable under clearly established law." *Blackwell v. Laque*, 275 Fed. Appx. 363, 367-68 (5th Cir. 2008). Therefore,

---

[12] On page 2 of his Response in Opposition [Docket No. 29] to Skinner's motion, Patton claims that he "has stated clearly articulated, actionable Fourteenth Amendment due process and equal protection claims," although the phrase "equal protection" only appears in his Complaint under the deliberate-indifference aversion at Claim No. 15. Patton's Memorandum in Opposition [Docket No. 30] also speaks in defense of a claim under the Equal Protection Clause. Pl. Memo at 7-8. If one is determined to infer the presence of an Equal Protection claim within Patton's Complaint, then Claim No. 7 seems to be its only possible headquarters.

Skinner cannot employ qualified immunity against Patton's Equal Protection claim. *See*

*Hampton Co. Nat'l Sur., LLC v. Tunica Cnty., Mississippi*, 543 F.3d 221, 229 (5th Cir. 2008)

("There is no qualified immunity for racial discrimination as such discrimination is clearly

unconstitutional.").

      Nevertheless, the merits of Patton's claim do not permit him to proceed beyond Skinner's

motion for summary judgment. "The two elements of a section 1983 claim are (1) deprivation of

a federal right (2) under color of state law." *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir.

1983). The record contains no appearance of dispute that Skinner acted under color of state law,

but in order to show a deprivation of equal protection on the basis of race, one must demonstrate

the existence of "a racially discriminatory purpose" and not just "a racially disproportionate

impact." *Washington v. Davis*, 426 U.S. 229, 239 (1976). Such a purpose "may be proven by

systematic exclusion of [members] of the proscribed race or by unequal application of the law to

such an extent as to show intentional discrimination." *Akins v. Texas*, 325 U.S. 398, 403-04

(1945). *See also Nat'l Ass'n of Governmental Emp. v. City Pub. Serv. Bd. of San Antonio, Texas*,

40 F.3d 698, 714-15 (5th Cir. 1994) ("To prove a cause of action under section 1983 based on a

violation of equal protection, Plaintiffs are required . . . to demonstrate intentional

discrimination; mere disparate impact will not suffice.").

      In the case at bar, Patton certainly has alleged a set of facts sufficient to make out a case

for racial discrimination violative of the Equal Protection Clause. *See* Pl. Memo in Opp. at 2 ("It

was Judge Skinner's intent in his handling of personnel to relegate black employees to positions

beneath the few white employees employed at the facility, without regard to seniority or other

qualifications."). But as Skinner rightly argues, the record lacks any substantive evidence to

support a jury's determination in Patton's favor on that claim; all that exists before the Court are Patton's allegations and speculation. Def. Memo at 9-10. And as noted above, such conclusory allegations and speculation do not meet a plaintiff's burden in opposing summary judgment. *Hubbard v. Yazoo City, Miss.*, 2011 WL 2692972, **2, 5 (S.D. Miss. July 11, 2011).

No evidence exists of systematic terminations on any basis, much less on the basis of race. Alongside his Response in Opposition to Skinner's motion, Patton presents excerpts from his employee handbook [Docket No. 29-1], correspondence with County personnel regarding Patton's requests to appeal his termination [Docket No. 29-2], excerpts from an August 2010 deposition of Skinner [Docket No. 29-3], and excerpts from a contemporaneous deposition of Detention Center employee Tori Flanagan [Docket No. 29-4], whose accounting mishaps Patton reported in November 2007. A review of Skinner's excerpts reveals testimony regarding Skinner's impression that "probably 80 percent" of the Hinds County Youth Court's employees are African Americans. Skinner Excerpts at 3. Another portion of the deposition transcript reviews an e-mail in which a court administrator requested "a list of [the e-mail recipients'] job descriptions . . . ." Skinner Excerpts at 5. Although Patton's memorandum makes no effort to connect these dots, one must assume that he hopes to imply that the aforementioned e-mail illustrated an intent to address the detention center's existing personnel, and that when draped against the high percentage of African-American employees, the two bits of information demonstrate an intent to lay off black employees. But the record's evidence does not support this deduction; even if a relationship between these two episodes could be drawn fairly, no evidence exists to suggest that terminations systematically would target one race over another.

Excerpts from Flanagan's deposition are similarly unrevealing. Flanagan testified that she

23

received a salary increase of roughly $8,000 as Judge Skinner's executive assistant, Flanagan

Excerpts at 4, but she spoke primarily about the practice of "docking" employees' salaries for

tardy arrivals. *See* Flanagan Excerpts at 3-9.

The record simply does not create a genuine issue of material fact on the question of

intentional discrimination by Skinner. And although roughly one month remained in discovery

when the magistrate judge entered a stay [Docket No. 28] pending a ruling on the motion at hand,

"[i]f the plaintiff needed more discovery in order to defeat summary judgment, it was up to [him]

to move for a continuance pursuant to [R]ule 56(f)." *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881,

887 (5th Cir. 1996).

Therefore, notwithstanding the inapplicability of qualified immunity, Skinner is entitled

to summary judgment on Patton's claim of deprived equal protection (Claim No. 7).

These conclusions leave unaddressed only Patton's claim "[t]hat defendants conspired

one with the other to deny [him] his constitutional rights." Complaint at 10. By virtue of the

failures of every other claim in Patton's Complaint, this allegation too fails. A conspiracy to

deprive one of his constitutional rights "is not actionable without an actual violation of section

1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Because Patton has not enunciated an

actionable claim under Section 1983, he likewise cannot prove that Skinner conspired to deprive

him of his constitutional rights, and Skinner also is entitled to summary judgment on this claim.

## <u>CONCLUSION</u>

For varying reasons, all of Patton's claims fail to survive Skinner's motion for summary

judgment.

Claims No. 1 (breach of contract) is dismissed because there is no evidence of a contract

between Patton and Skinner. Claims No. 2 (breach of fiduciary duty), Nos. 3 and 6 (negligent omission), No. 4 (breach of the implied covenant of good faith and fair dealing), Claim No. 5 (fraudulent omission), No. 9 (wrongful termination), No. 13 (failure to train), No. 14 (failure to supervise), No. 16 (negligence), and No. 18 (bad faith) are barred by sovereign immunity because these allegations seek to hold Skinner liable for acts allegedly performed in the course and scope of his employment. Therefore, Skinner is entitled to summary judgment on the same.

Claim No. 8 (negligent termination) is interpreted as redundant to Claim No. 16, and therefore, summary judgment is appropriate thereon.

Claim No. 21 (slander, libel, and defamation) fails because Patton has not pointed to a specific defamatory statement uttered within the one-year limitations period established by Section 15-1-35 of the Mississippi Code.

Claim No. 7 (discrimination, *i.e.*, a Section 1983 claim for deprivation of equal protection) fails because the evidence in the record, even when viewed in the light most favorable to Patton's case, does not create a genuine issue of material fact.

Claims No. 11 (harassment), No. 12 (conspiracy to deny constitutional rights), No. 15 (substantive Due Process), No. 17 (First Amendment), No. 19 (hostile workplace), and No. 20 (separation of powers) fail because Patton has not enunciated the violation of a clearly established constitutional right.

Therefore, the Motion for Summary Judgment [Docket No. 22] of Skinner in his individual capacity is granted.

SO ORDERED this Eighteenth day of July 2011.

25

_/s/ Carlton W. Reeves_
Hon. Carlton W. Reeves
United States District Court Judge